UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERNEE KOLLOCK-MANN, | |
| Plaintiff, | CIVIL NO. 15-4708 (NLH/KMW) |
| v. | **OPINION** |
| ROBIN MORANTE, et al., | **FILED UNDER SEAL** |
| Defendants. | |

**APPEARANCES:**

MATTHEW BENJAMIN WEISBERG
DAVID ANDREW BERLIN
WEISBERG LAW
7 SOUTH MORTON AVENUE
MORTON, PA 19070

　*Attorneys for Plaintiff Jernee Kollock-Mann.*

ROBERT J. MCGUIRE
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
DIVISION OF LAW
25 MARKET STREET – 7TH FLOOR WEST WING
P.O. BOX 116
TRENTON, NJ 08625

　*Attorney for Defendants Robin Morante, Kevin Kellejan, and Tom DiNunzio.*

**HILLMAN, District Judge**

　　This case concerns claims against three investigators at the Camden County Prosecutor's Office ("CCPO") involved in an

investigation into allegations of sexual misconduct by teachers at Triton Regional High School ("Triton"). Presently before this Court is Defendants' Motion for Summary Judgment, Plaintiff's opposition, Plaintiff's Motion to Seal, Plaintiff's Motion for Leave to File a Sur-Reply, and Plaintiff's Amended Motion to Seal. For the reasons expressed below, this Court will grant Defendants' Motion for Summary Judgment, deny Plaintiff's Motion to Seal, deny Plaintiff's Motion for Leave to File a Sur-Reply, and grant the Amended Motion to Seal.

## BACKGROUND

This Court bases its recitation of facts on the Defendants' and Plaintiff's statements of material facts not in dispute. This Court will note any relevant, disputed fact when applicable.

In April 2012, Plaintiff Jernee Kollock-Mann was a Vice Principal at Triton. During that time, a Triton student, R.P., learned that two of her classmates were meeting with certain Triton teachers off school grounds and were exchanging sexually explicit text messages. R.P. believed one classmate was "hooking up" (here, meaning kissing) with a Triton teacher and the other classmate was engaging in sexual intercourse with another Triton teacher.

A substitute teacher, Dina Galdo (who now goes by her married name, Dina Tomczak),[1] met with Principal Catherine DePaul in the parking lot of the Deptford Mall to relay information about these potentially inappropriate relationships.  As a result of this revelation, a meeting was held in Principal DePaul's office between R.P., Principal DePaul, and Plaintiff.  This meeting and the actions taken in response to the information revealed in the meeting are central to this case.

During the meeting, Principal DePaul and Plaintiff questioned R.P. about her knowledge of the possibly inappropriate interactions between certain Triton teachers and students.  R.P. was asked to prepare a written statement.  R.P. did as she was asked and prepared a handwritten statement.  Plaintiff has admitted she changed at least one sentence in the statement to better reflect what she thought R.P. intended to convey.[2]

After the meeting with R.P., Plaintiff believed "there was definitely credible evidence of potential conduct that would constitute child abuse that DYFS [the New Jersey Division of

---

[1] This Court will refer to Ms. Tomczak as Defendants refer to her, Galdo-Tomczak.

[2] Plaintiff admitted she changed the sentence "I never saw dislay [sic] of infection between them" to "I never saw dislay [sic] of affection between them" after R.P. had completed writing her statement.  Plaintiff explained she changed the word because she believed the child wished to describe emotion.

3

Youth and Family Services, which is now known as the New Jersey Division of Child Protection and Permanency] should be aware of" and that DYFS should have been notified. (Defs.' SOMF ¶ 15 (additions in original).) She also believed at the time that the local school board's policy would have required her to immediately report to DYFS if she had "reasonable cause to believe a pupil has been subjected to child abuse." (Defs.' SOMF ¶ 16.) On this point both sides agree: Plaintiff did not actually make a report, even though she believed one was appropriate given the circumstances.

Plaintiff suggests she did not make the report because she asked Principal DePaul whether she would like her to report it, and Principal DePaul instructed her to refrain. In her deposition for this case, DePaul denied she gave this instruction to Plaintiff. (Defs.' SOMF ¶ 19.) Additionally, Plaintiff suggests she need not have reported the information she received because Galdo-Tomczak, not her, was the first person to receive the information and thus was obliged to report it. In any event, Plaintiff admits that she never disclosed to Defendants in her sole interview with them that others knew about the alleged sexual abuse before her and had failed to report it.

Several months later, in August 2012, Principal DePaul informed others in the school district about the discovery of a

4

large number of sexually explicit and inappropriate text messages between students and teachers at Triton.  On August 3, 2012, the Chief of Detectives of the CCPO assigned Defendant Robert Morante, an investigator with the CCPO, to investigate the allegations.  Defendants Kevin Kellejan and Thomas DiNunzio, also members of the CCPO, assisted in the investigation.

As part of their investigation, Defendants interviewed both R.P. and Plaintiff, among others.  Defendant Morante interviewed R.P. who made several statements concerning Plaintiff.  First, R.P. stated:

> [L]ike every time I said something [DePaul and Plaintiff] made it feel like they were just helping me how to write it but really they were like changing up my statement. . . . And I just kept saying like I said like I knew stuff was going on . . . [but] they would try to make it sound like okay, well, you didn't see it let's just write that.

(Defs.' SOMF ¶ 11.)  Second, R.P. stated: "And [Plaintiff] even said to me back like I kind of knew this was going on before but then in the statement she was kind of making it seem like nothing was going on."  (Defs.' SOMF ¶ 12.)[3]

---

[3] Plaintiff denies R.P.'s allegations, arguing her edit of R.P.'s statement "speaks for itself."  The Court understands Plaintiff's dispute on this point, but notes R.P.'s broader allegation that Plaintiff sought to influence and downplay her allegations.  In other words, the edit, even if benign, has no direct bearing on Plaintiff's alleged behavior during the interview of R.P. and what she may have expressed orally to R.P.  To be clear, the Court cannot, and does not, resolve this factual dispute.  As explained more fully infra, absent evidence Defendants disbelieved R.P.'s version of events, the dispute is

After completing their investigation, Defendants provided the information they discovered to the prosecutor. Plaintiff admits "the Prosecutor elected to file three criminal charges against [her]." (Defs.' SOMF ¶ 29; Pl.'s SOMF ¶ 29.) Those three charges were: (1) a failure to make a statutorily-required report regarding suspected child abuse under N.J. Stat. Ann. § 9:6-8.14, (2) official misconduct under N.J. Stat. Ann. § 2C:30-2, and (3) hindering apprehension or prosecution under N.J. Stat. Ann. § 2C:29-3. Along with Plaintiff, Principal DePaul and the teachers allegedly engaging in inappropriate sexual conduct were also charged with various crimes. (Defs.' SOMF ¶ 36.) Defendants allege they did not make the charging decision.

Specifically, Defendant Morante stated "I don't make charging decisions. The prosecutor does." (Defs.' SOMF ¶ 31.) Defendant Kellejan stated he served as a factfinder, and all the information he finds "is forwarded to an assistant prosecutor or prosecutors. They would then discern whether or not somebody had committed a crime and go forward or not go forward with charges." (Defs.' SOMF ¶ 33.) Defendant DiNunzio stated he did not have input into whether someone should be charged, saying "We can't say 'This one should be charged.'" (Defs.' SOMF ¶ 34.) Although Plaintiff admitted in her deposition that she has

---

immaterial as the decision to prosecute was made by the prosecutors and not the investigators.

6

no information indicating Defendants were involved in the charging decision, she denies these statements, pointing out that Defendant Morante signed the summons-complaint filed in her criminal case.

Eventually, Plaintiff reached an agreement with the CCPO. She voluntarily resigned from her then-current position at Black Horse Pike Regional School District and the CCPO dismissed all charges against her. Plaintiff denies Defendants' characterization of this agreement as a plea deal.

Plaintiff brought this case, along with her husband Daryl Mann, on June 29, 2015. Plaintiff brought three claims, one for malicious prosecution under 42 U.S.C. § 1983, one for malicious prosecution under the New Jersey Civil Rights Act ("NJCRA" or "N.J. Stat. Ann. § 10:6-2"), and one for loss of consortium. The loss of consortium claim was dismissed via this Court's February 28, 2017 Order. Discovery ensued. Defendants filed the instant Motion for Summary Judgment on the two remaining counts on May 11, 2018. Plaintiff and Defendants fully briefed this motion.

Plaintiff also filed two other motions. Plaintiff filed a Motion for Leave to File a Sur-Reply Brief on September 4, 2018, which was opposed by Defendants via letter brief on September 13, 2018. Plaintiff also filed a Motion to Seal, on behalf of all parties on August 10, 2018. The Court reviewed this motion

7

and issued an Order to Show Cause on December 7, 2018, directing the parties to file an amended motion to seal complying with the Local Civil Rules.  The parties did so on December 24, 2018.  Thus, these three motions are fully briefed and ripe for adjudication.

## ANALYSIS

### A.   Subject Matter Jurisdiction

This Court possesses subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367.

### B.   Motion for Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  "In considering a motion for summary

judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving

9

party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 257.

**C.   Motion for Summary Judgment**

Defendants' present two main reasons why this Court should grant their Motion for Summary Judgment and dismiss this case. First, Defendants argue Plaintiff has not shown her malicious prosecution claims under § 1983 and NJCRA can survive summary judgment.  Second, Defendants again argue they are entitled to the protection of qualified immunity in this case.  Based on the decision of the Court infra, Defendants argument concerning qualified immunity is rendered moot and will not be addressed by this Court.

10

### a. Whether the Malicious Prosecution Claim Must Be Dismissed as a Matter of Law

Defendants challenge whether Plaintiff has shown any of the elements necessary to prove malicious prosecution. "'To prove malicious prosecution under § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).[4]

First, this Court will examine whether Defendants here initiated a criminal proceeding. Generally, it is the prosecutor, not the officer, who initiates a criminal proceeding. Although officers are not per se insulated from suit, a very specific test must be met to overcome the general rule. Only "[i]f the officers influenced or participated in the

---

[4] Defendants insist that the state law claim under the NJCRA is governed by the same standard as the § 1983 claim. Zisa v. Haviland, No. 17-5551, 2018 U.S. Dist. LEXIS 180823, at *70-71 (D.N.J. Oct. 19, 2018) (citing Waselik v. Twp. of Sparta, No. 16-4969, 2017 U.S. Dist. LEXIS 76646, at *8 n.15 (D.N.J. May 18, 2017)). They are correct, and Plaintiff does not dispute that the same law governs both claims.

11

decision to institute criminal proceedings, [] can [they] be liable for malicious prosecution." Halsey v. Pfeiffer, 750 F.3d 273, 297 (3d Cir. 2014) (citing Sykes v. Anderson, 625 F.3d 294, 308-09, 317 (6th Cir. 2010)).

    Here, as the moving parties, Defendants have brought forward specific facts relating to each CCPO investigator to show that none of them made the decision to charge Plaintiff. (See Defs.' SOMF ¶¶ 30-33.)[5]  Despite her obligation at this stage of the proceedings and in response to Defendants' Motion for Summary Judgment, Plaintiff has shown no facts on the record which would support a finding that any of the Defendants influenced (or even participated in) the decision by the prosecutor to institute criminal proceedings against her.  While the facts here tend to show the Defendants relayed the information they gathered to the prosecutor, no facts have been cited which show the Defendants were a part of the decision-making process.

---

[5] This Court notes Plaintiff generally denies each of these facts.  As the well-known standard for summary judgment makes clear, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.  Plaintiff has not done so here, instead merely asserting that Defendant Morante signed the summons-complaint.

12

The fact that Defendant Morante signed the summons-complaint is of no moment.[6] Plaintiff has known of this signature even before the present action was filed. But, throughout fact discovery, Plaintiff has elicited no testimony from Defendant Morante (or anyone else) which would suggest that this signature represents anything more than the important but nonetheless ministerial act of attesting to the accuracy of the statements made therein. Defendant Morante was very clear in her testimony: she had no part in the process of whether to charge Plaintiff.

This does not present an issue of fact that must be determined by a factfinder. In fact, this Court has previously found that, absence evidence of false material statements by the investigator, a signature on a complaint by an officer is not enough to allow a malicious prosecution claim to survive a motion to dismiss. See Thomas v. City of Camden, Civ. A. No. 10-133 (NLH)(AMD), 2011 U.S. Dist. LEXIS 70058, at *8, 10-11 (D.N.J. June 29, 2011) (dismissing claims against defendant police officers on Rule 12(c) motion for lack of allegations concerning false information or interference with charging decision, even though some officers signed a complaint against

---

[6] Quite obviously, this argument involves neither Defendant Kellejan nor Defendant DiNunzio and has no relation to the malicious prosecution claims lodged against either.

13

the plaintiff).  Plaintiff presents no case law or facts to the contrary.

Instead of grappling with this test, Plaintiff instead provides irrelevant factual assertions.  Whether Defendants were the "gatekeepers of information for the prosecutors" does not rebut Defendants' testimony showing they had no involvement in the charging decision.  (Pl.'s Opp. Br. 23.)  Whether Defendant Morante "showed favoritism" to Galdo-Tomczak or whether Defendant DiNunzio had a conflict of interest because a relative may have been in a relationship with Galdo-Tomczak does not relate in a material way to the decision to charge Plaintiff. (Pl.'s Opp. Br. 23.)  Finally, whether Defendants "treated Plaintiff much differently than [others who may have been similarly situated"] is similarly irrelevant to the charging decision.  (Pl.'s Opp. Br. 24.).

The only other relevant argument made by Plaintiff here is whether "Defendants effectively controlled which teachers would be charged."  This is soundly rebutted by each Defendants' testimony.  Plaintiff cites no record facts in support of this contention.  Again, the only evidence this Court has before it indicates that none of the Defendants were involved in the

14

charging decision for Plaintiff.[7]  The lack of such evidence is fatal to Plaintiff's malicious prosecution claim.

Nor has Plaintiff proffered sufficient evidence to show that any knowingly false evidence about Plaintiff was provided by Defendants to the prosecutors.  In this Circuit, "[a]n officer may . . . be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."  Gatter v. Zappile, 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999), aff'd, 225 F.3d 648 (3d Cir. 2000) (citations and internal quotation marks omitted); see Halsey, 750 F.3d at 297 ("It is settled law that 'officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions.'") (quoting Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004)); see also Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988))

---

[7] Probable cause has no relevance to this element, which Plaintiff also argues in response to Defendants.  Plaintiff must offer sufficient proof as to each of the elements of a claim and if any one element is lacking Plaintiff's case may not move past summary judgment.

Plaintiff brings forth no facts tending to show Defendants provided false information to the prosecutor. Plaintiff brings forth no facts tending to show Defendants interfered with the prosecutor's informed discretion in any way as to the decision to charge Plaintiff. Accordingly, this Court will dismiss the malicious prosecution claims against all Defendants brought under § 1983 and the NJCRA. This holding moots the remaining arguments presented by Defendants so this Court will not consider them.

### D.  Motion for Leave to File a Sur-Reply

On September 4, 2018, Plaintiff filed a motion for leave to file a sur-reply. Plaintiff argues a sur-reply "would better enable this Honorable Court to come to a just and accurate determination of Defendants' Motion in light of Defendants' Reply Brief arguments." Plaintiff presents no other reason why this Court would require a sur-reply and Defendants' oppose one. In light of Plaintiff's argument, which provides no basis for this Court to consider a sur-reply motion, and the able briefing by all parties of this matter, Plaintiff's Motion for Leave to File a Sur-Reply will be denied.

### E.  Motion to Seal

Plaintiff initially filed a Motion to Seal on August 10, 2018. On December 7, 2018, this Court directed Plaintiff to file an amended motion to seal complying with Local Civil Rule

16

of Procedure 5.3(c).  Plaintiff has filed an unopposed Amended Motion to Seal.  As a result, this Court will deny Plaintiff's Motion to Seal as moot and only consider Plaintiff's Amended Motion to Seal.

In the Amended Motion to Seal, Plaintiff requests certain briefs and documents be sealed by the Court because these documents contain information on sexual abuse regarding minors. Local Rule 5.3(c) provides that the following must be established in a motion to seal:

> (a) the nature of the materials or proceedings at issue;
>
> (b) the legitimate private or public interest which warrant the relief sought;
>
> (c) the clearly defined and serious injury that would result if the relief sought is not granted;
>
> (d) why a less restrictive alternative to the relief sought is not available;
>
> (e) any prior order sealing the same materials in the pending action; and
>
> (f) the identity of any party or nonparty known to be objecting to the sealing request.

Plaintiff has addressed each of these elements to the Court's satisfaction and have identified with particularity the briefs and documents which should be filed under seal. Defendants do not dispute the sealing of these documents and have accordingly not filed any opposition to Plaintiff's Amended Motion to Seal.  Because it appears the parties have satisfied

17

the requirements of Local Civil Rule 5.3(c) and good cause is shown, this Court will grant Plaintiff's Amended Motion to Seal.

The Court does not believe that this Opinion reveals matters under seal. However, in an abundance of caution, the Court will place this Opinion temporarily under seal. If any party believes that any portion of this Opinion should be redacted they should inform the Court by sealed letter no later than January 10, 2019 setting forth the justification for such redaction or redactions. If no such letter or letters are received, the Opinion will be unsealed by the Clerk.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion for Summary Judgment will be granted, Plaintiff's Motion to Seal will be denied, Plaintiff's Motion for Leave to File a Sur-Reply will be denied, and Plaintiff's Amended Motion to Seal will be granted.

An appropriate Order will be entered.


Date: _December 27, 2018_          _s/ Noel L. Hillman_
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.